**SEABOARD AIR LINE RAILROAD COMPANY, Plaintiff,**

v.

**RED DIAMOND MILLS, Inc., Defendant.**

**Civ. A. No. 286.**

United States District Court, Middle D. Georgia, Americus Division.

Feb. 4, 1955.

McDonald & McDonald, Fitzgerald, Ga., Wright & Reddick, Cordele, Ga., J. C. McDonald, Fitzgerald, Ga., of counsel, for plaintiff.

Mixon & Forrester, George M. Mixon, Cordele, Ga., of counsel, for defendant.

DAVIS, Chief Judge.

This case was submitted to the Court for trial without a jury on a stipulation of facts, the pertinent portions of which are summarized below.

During the period from October 28, 1950 to November 9, 1950 numerous bulk carload shipments of peanuts were de- livered to the Macon, Dublin & Savannah Railroad Company at Allentown, Georgia, for delivery to the defendant at the trans- it point of Cordele, Georgia. The peanuts were to be cleaned and shelled by de- fendant prior to further transportation to Pensacola, Florida. Upon delivery, the defendant paid the plaintiff freight charges for the shipment from Allentown to Cordele at the local rate of 23¢ per cwt.

Between February 8, 1951 and March 1, 1951, 14 carloads of processed pea- nuts, a portion of the shipments men- tioned above, were shipped by defendant over lines of plaintiff and a connecting carrier and were delivered on or before March 6, 1951 to the Commodity Credit Corporation at Pensacola, Florida.

In accordance with provisions of plain- tiff's Freight Tariff No. 182, governing transit privileges, plaintiff refunded to the defendant at the time of the out- bound movement the freight charges theretofore collected from defendant on the inbound movement of said 14 cars, less transit charges of 5¢ per cwt. The amount of the refund was $1,260.

The claiming of transit privileges and the consequent refund of $1,260 to the defendant contemplated payment of freight charges by the Commodity Credit Corporation on the basis of the through tariff rate of 81¢ per cwt. plus 5¢ transit charges from Allentown, Georgia, to Pen- sacola, Florida. The Commodity Credit Corporation did not pay charges on that basis but purchased the 14 carloads of peanuts f. o. b. Cordele and paid only the local export tariff rate of 37¢ per cwt. from Cordele to Pensacola. Under those circumstances defendant was not enti- tled to transit privileges or the result- ing refund of $1,260.

On or before September 11, 1951, the plaintiff notified the defendant that trans- it privileges on the aforesaid 14 carload shipments had been disallowed but that said privileges could be claimed on other eligible shipments. For a shipment to be eligible for transit privileges, the out- bound shipment must take place within twelve months from the date of the

freight bills covering the inbound shipments. The defendant did ship four carloads of processed peanuts to Chicago within the twelve month period and transit privileges were allowed as to those four shipments. This reduced defendant's indebtedness to plaintiff to the sum of $900. This sum has not been repaid by the defendant.

The plaintiff filed suit in this Court on August 27, 1953, seeking to recover the $900 previously refunded to the defendant. The defendant contends that the action is barred by the statute of limitations.

After careful consideration of the pleadings, the stipulation of facts and the briefs submitted, the Court can only conclude that this action is barred by the statute of limitations and the defendant is entitled to a judgment.

The applicable statute of limitations is found in 49 U.S.C.A. § 16(3), which reads, in part, as follows:

"(a) All actions at law by carriers subject to this chapter for recovery of their charges, or any part thereof, shall be begun within two years from the time the cause of action accrues, and not after.

\*   \*   \*   \*   \*   \*

"(e) The cause of action in respect of a shipment of property shall, for the purposes of this section, be deemed to accrue upon delivery or tender of delivery thereof by the carrier, and not after."

The defendant contends that the two year limitation period commenced to run no later than March 6, 1951. The plaintiff contends that the statute commenced to run on November 10, 1951, arguing that until that date the defendant had the right to exercise transit privileges on other shipments.

The authorities on which the plaintiff relies seem to the Court to require a ruling against the plaintiff. In Arkansas Oak Flooring Co. v. Louisiana & Arkansas Ry. Co., 5 Cir., 166 F.2d 98, 102, it was held that subparagraph (e) of section 16(3), title 49, U.S.C.A., did not apply to transit shipments but that the suit must be "brought within two years after the cause of action, that is the right to sue, had in fact and in law accrued." It is true that in that case, and in Chicago & N. W. Railroad Co. v. Conner Lumber & Land Co., 7 Cir., 212 F.2d 712, it was held that the statute did not commence to run until the termination of the 12 month period during which manufactured lumber could be shipped, so as to entitle the shipper to the through tariff rate. It should be noted, however, that in both those cases the shipper initially paid only the lower rate, which was to apply if equivalent outbound shipments were made within 12 months. In those cases it was impossible to determine whether the higher rate was applicable until it was discovered whether equivalent outbound shipments were made within the time allowed. In discussing the matter both courts held that the statute could not begin to run until the amount of the freight charges could be ascertained.

Clearly the rates applicable to the shipments here involved could have been ascertained and sued for immediately upon failure of the Commodity Credit Corporation to pay the through tariff rate. It was then clear that as to those 14 cars the local tariff rate of 23¢ per cwt. was applicable. The fact that the defendant might have claimed transit privileges as to other shipments (and in fact did so) and thus reduce the amount of the freight charges due does not alter the fact that as of March 6, 1951 the amount of freight charges due on the 14 cars shipped to Pensacola was ascertainable and collectible.

The claiming of transit privileges as to other shipments might alter the rates applicable to those shipments but could not change the rates applicable to the 14 cars already delivered to the purchaser in Pensacola. The offer by the railroad to allow defendant to claim privileges as to other shipments instead of paying the charges immediately was merely an extension of credit and an agreement to allow a set-off of future re-

funds, to which the defendant might become entitled. This does not postpone the creation of the cause of action. The cause of action arose when the Commodity Credit Corporation by its action made the local tariff rate applicable.

In view of the foregoing the Court finds that the cause of action arose not later than March 6, 1951 and was barred when this action was instituted.

It is, therefore, ordered and adjudged that the plaintiff take nothing from the defendant. Let the costs be assessed against the plaintiff.